# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| THE NEW YORK TIMES COMPANY and KENNETH P. VOGEL,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>Defendant. | Civil Action No. 1:18-cv-02095 |

## DECLARATION OF PATRICK N. FINDLAY

I, Patrick N. Findlay, declare as follows:

1. I am the Acting Chief and Special Counsel of the Office of Strategy Management and Development ("OSMD") of the National Security Division ("NSD" or "the Division") of the United States Department of Justice ("DOJ" or "the Department"). NSD is a component of the Department. *See* 72 FR 10064. I have served as the Acting Chief since July 2018, and as a Special Counsel in OSMD since June 2016. Prior to my positions with NSD, I served as an Associate General Counsel for the Federal Bureau of Investigation (FBI) from July 2012 until June 2016.

2. Among other responsibilities, in my capacity as the Acting Chief of OSMD, I serve as the Acting Director of the Freedom of Information Act and Declassification Unit ("NSD FOIA"), which is responsible for responding to requests for access to NSD records and information pursuant to the *Freedom of Information Act* ("FOIA"), *codified at* 5 U.S.C. § 552, and the *Privacy Act of 1974*, as well as processing the NSD records which are responsive to

FOIA requests received by other Executive Branch agencies. Through the exercise of my official duties, I have become familiar with this action and the underlying FOIA requests at issue. The statements contained herein are based upon my personal knowledge of the subject of plaintiffs' FOIA requests, as well as information provided to me in the course of my official duties. I have consulted with officials in NSD FOIA regarding plaintiffs' FOIA requests.

3. I submit this declaration in support of the Department's Motion for Summary Judgment in this proceeding.

### Plaintiffs' FOIA Requests

4. On August 10, 2017, NSD FOIA received from the Department's FOIA/PA Mail Referral Unit (MRU) three of plaintiffs' FOIA requests, each dated August 8, 2017.

5. Through the FOIA requests sent to NSD FOIA, plaintiffs sought certain internal and external correspondence related to four groups of entities and individuals (collectively, "persons") from DOJ'S Foreign Agents Registration Act Unit ("FARA Unit"): (A) the European Centre for a Modern Ukraine and its employees, representatives and officials, (B) the Ukrainian Party of Regions and its employees, representatives and officials, (C) Inovo BV and Flynn Intel Group and their employees, representatives, and officials, and (D) the Human Rights Accountability Global Initiative Foundation and Prevezon Holdings and their employees, officials, or representatives. Additionally, plaintiffs sought expedited processing of their FOIA requests. Copies of these three FOIA requests, dated August 8, 2017, are attached hereto as Exhibits A, B, and C, respectively.

6. By e-mail dated August 30, 2017, NSD FOIA acknowledged receipt of plaintiffs' FOIA requests and denied plaintiffs' request for expedited processing. A copy of NSD FOIA's acknowledgment e-mail to plaintiffs, dated August 30, 2017, is attached hereto as Exhibit D.

7. By letter dated May 10, 2018, NSD FOIA issued its first interim response to plaintiffs, stating that NSD FOIA "processed eleven documents (26 pages)… [and withheld] the records in part pursuant to… FOIA exemptions… 6 [and] 7(C)." A copy of this letter, dated May 10, 2018, is attached hereto as Exhibit E.

8. By letter dated July 10, 2018, NSD FOIA issued its second interim response to plaintiffs, stating that NSD FOIA "processed 294 pages for today's response under the FOIA… [and released] 17 pages… in part pursuant to… FOIA exemptions… 6 [and] 7(C)." NSD FOIA also informed plaintiffs that it was "withholding 277 pages in full pursuant to… FOIA exemptions… 4, 6, 7(A), 7(C), and 7(F)." A copy of this letter, dated July 10, 2018, is attached hereto as Exhibit F.

9. By letter dated September 12, 2018, NSD FOIA issued its final response to plaintiffs, informing plaintiffs that NSD FOIA "… processed approximately 1,810 emails and one DVD of documents… [and was] withholding the records in full pursuant to FOIA exemption 7(A)." NSD FOIA also stated that "consistent with an agreement between the parties and the Court's order dated September 11, 2018, [NSD FOIA has] not processed these records for additional exemptions, but we reserve our right to do so in the event that the assertion of exemption 7(A) is vacated or withdrawn." A copy of this final response letter dated September 12, 2018, is attached hereto as Exhibit G. Accordingly, in this declaration, I do not address exemptions other than 7(A).

### NSD Search for Records Responsive to Plaintiffs' Requests

10. NSD FOIA staff determined that the FARA Unit of the Counterintelligence and Export Control Section ("CES") would be the NSD component most likely to maintain records responsive to plaintiffs' FOIA requests, as plaintiffs sought records authored by and exchanged

3

with employees of the FARA Unit. Furthermore, the FARA Unit is responsible for the administration of the *Foreign Agents Registration Act* ("FARA"), 22 U.S.C. §§ 611 *et seq*. Accordingly, NSD sent plaintiffs' FOIA requests to personnel in the FARA Unit to search for records responsive to plaintiffs' FOIA requests.

11. FARA Unit attorneys confirmed, based on their familiarity with the types of records at issue in this matter, that the records responsive to plaintiffs' requests would be located in the FARA Unit's files. FARA Unit attorneys then helped facilitate NSD's review of the responsive records from those files for purposes of responding to plaintiffs' FOIA requests.

12. NSD has concluded that no other component or records repositories within NSD would likely maintain records responsive to plaintiffs' requests.

### **Withholding of Responsive Records**

13. NSD has determined that some records responsive to plaintiffs' requests are exempt from disclosure in their entirety pursuant to FOIA Exemption 7(A). Specifically, NSD has determined that certain records (the "withheld records") referred to in NSD's second interim response letter, dated July 10, 2018, as well as in NSD FOIA's final response letter, dated September 12, 2018, are exempt from disclosure pursuant to FOIA Exemption 7(A) because they were compiled for law enforcement purposes and their release could reasonably be expected to interfere with enforcement proceedings.

### Description of Responsive Records

14. NSD FOIA located several categories of records responsive to plaintiffs' FOIA requests with regard to the Russia investigation. The Department has indexed the records on a *Vaughn* index, attached hereto as Exhibit H, attributing each record to one of six categories. Those categories are: 1) correspondence between the Department and counsel for Manafort,

4

Gates, and DMP International; 2) correspondence between the Department and counsel to Flynn and Flynn Intel Group; 3) exhibits to a complaint filed with the FARA Unit in 2016 by a private entity, Hermitage Capital Management, concerning alleged violations of FARA;[1] 4) documents pertaining to one or more enforcement proceedings, as described in my Ex Parte Declaration, (also to be executed November 9, 2018), and which I expect will be submitted for the court's *in camera* review ("Findlay Ex Parte Declaration"); 5) records pertaining to the administration of FARA located on a DVD held in the FARA Unit's hard copy files and in an electronic shared drive within the FARA Unit; and 6) internal Department email.

## FOIA Exemption 7(A)

15. FOIA Exemption 7 exempts from mandatory disclosure records or information compiled for law enforcement purposes when disclosure could reasonably be expected to cause one of the harms enumerated in the subparts of the exemption. *See* 5 U.S.C. § 552(b)(7).

16. **Compiled for law enforcement purposes.** Before an agency can invoke any of the harms enumerated in Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. The withheld records meet this requirement because they were compiled for law enforcement purposes within the meaning of exemption 7 for two reasons: both because they were compiled for the criminal or civil enforcement of FARA, and because they were compiled for a national security purpose, both of which are within NSD or its partners' enforcement duties.

---

[1] The Complaint itself was publicly disclosed by the Senate Committee on the Judiciary (Mar. 31, 2017), available at <https://www.judiciary.senate.gov/imo/media/doc/2017-03-31%20CEG%20to%20DOJ%20(Anti-Magnitsky%20FARA%20violations)%20with%20attachments.pdf> (visited Nov. 9, 2018).

17.     First, as a general matter, as the unit responsible for the administration of FARA, the FARA Unit's files are compiled for and are related to the criminal and civil enforcement of federal law, in this case FARA, which is within the Unit's and its DOJ law enforcement partners' law enforcement duties.  The FARA Unit is part of NSD's Counterintelligence and Export Control Section (CES).  If CES believes a willful violation of FARA has occurred, it will partner with the appropriate United States Attorney's Office or other appropriate Department component and the FBI to open a criminal investigation.  Similarly, if CES believes that a significant violation of FARA has occurred for which a civil injunctive remedy is appropriate, it will file such an action in the appropriate U.S. district court with the assistance of the local U.S. Attorney's Office or other appropriate Department component.

18.     Second, FARA is a national security tool used to identify foreign influence and threats to the United States political process.  Information and records collected and synthesized by the FARA Unit are used by NSD, law enforcement, and other partners to assess national security threats.  For example, FARA Unit and CES personnel work together with members of domestic or foreign law enforcement or intelligence agencies to protect against hostile intelligence or influence operations in the United States.  Even when these activities do not result in criminal or civil proceedings, the documents compiled as a result are part of the FARA Unit and CES's enforcement responsibilities.

19.     **Pending or prospective enforcement proceedings.**  Having confirmed that the withheld records were compiled for law enforcement purposes as contemplated in FOIA, NSD must establish the existence of a relevant pending or prospective investigation or other proceeding to properly assert Exemption 7(A).  NSD concluded that the withheld records referenced in the *Vaughn* index relate to one or more pending or prospective enforcement

proceedings. It is not possible to provide additional detail about the nature of the proceeding(s)[2] in a public setting without revealing information that is itself protected by exemption 7(A) and causing the harms that exemption 7(A) is designed to avert. To prevent that harm, I am providing additional detail in my ex parte declaration, which I expect to be filed under seal.

20.     **Could reasonably be expected to interfere.** Finally, NSD must establish that disclosure of responsive records could reasonably be expected to interfere with the enforcement proceedings described in the previous paragraph. It is not appropriate in a public declaration to provide full information about the interference that release of the withheld records would cause to enforcement proceedings; thus, I provide additional detail in my ex parte declaration. However, below I describe the general nature of the interference that could reasonably be expected to arise from disclosure.

21.     First, premature disclosure of the withheld records could reveal the existence of law enforcement proceedings that are not officially acknowledged or publicly known. Even without disclosing the content of records, the fact of whether the government possesses law enforcement records related to a particular person could tend to suggest that the government has an investigative interest in that person or associated persons. In turn, the premature revelation of an investigation or proceeding can reasonably be expected to cause a range of different problems. Witnesses, subjects or targets may destroy relevant evidence. They may also flee. Witnesses, subjects or targets may also attempt to coordinate their actions or their testimony in an effort to defeat criminal prosecution or civil enforcement proceedings.

---

[2] From this point forward in the declaration, I use the term "proceedings" in a generic fashion to indicate one or more enforcement proceedings. This usage is for ease of reading and convenience, but should not be read to indicate whether one or more than one proceeding is covered.

22. Second, premature disclosure of the withheld records could reveal not just the existence of enforcement proceedings, but also their nature, scope, and direction. For example, the withheld records show that DOJ knew certain facts at certain times, or that DOJ sought specific pieces of information from specific sources. Similarly, premature release of law enforcement records could reveal evidence the government has gathered in support of enforcement proceedings and could indicate what the government is or is not aware of. Sophisticated witnesses, subjects or targets could use any of the preceding information to disrupt an investigation by, for example, attempting to tamper with witnesses, alerting associates about potential government enforcement actions, destroying or altering evidence, or conforming their testimony to the known information.

23. Third, premature release of the withheld records could also shed light on the government's investigative or prosecutorial strategy. Many of the withheld records consist of wholly intra-governmental email communications, which include deliberations about enforcement proceedings. Release of the withheld records would allow witnesses, subjects or targets to understand the government's strategy or the strengths and weaknesses of the government's case or evidence and tailor countermeasures accordingly.

### Segregation of Nonexempt Information

24. The withheld records were reviewed to determine whether any information existed that could be segregated for release to plaintiffs in response to their FOIA requests. NSD has determined that, given the expected harms from release described above and in my ex parte declaration, no non-exempt information exists that can be reasonably segregated and released to plaintiffs.

25. Releasing even general information about the withheld law enforcement records

8

could reasonably be expected to interfere with one or more enforcement proceedings. For example, information about which government personnel communicated with other government personnel at which times may suggest the existence or nature of an enforcement proceeding. Similarly, the dates of communications with persons outside of government and the identities of those persons could also shed light on the government's potential investigative interests. Information about the number of communications between specific government personnel about specific topics or at specific times also could suggest the nature of the government's investigative interests. It is, therefore, not appropriate in a public setting to provide any further information about the withheld records. I provide additional information on the basis for the government's segregability determination in my ex parte declaration.

## CONCLUSION

I certify, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct.

Executed this 9th day of November, 2018, at Washington, D.C.

PATRICK N. FINDLAY